IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| GAREY DAVIS, *et al.*, | § | |
| | § | |
|    Plaintiffs, | § | |
| | § | |
| v. | § | Civil Action No. 3:06-CV-2027-N |
| | § | |
| TXU CORP., *et al.*, | § | |
| | § | |
|    Defendants. | § | |

## **ORDER**

This Order addresses Defendants TXU Corp. and TXU Electric Delivery Co.'s (collectively, "TXU") motion for summary judgment [22]. Because Plaintiffs cannot state a prima facie case of gender discrimination, the Court grants TXU's motion.

### I. BACKGROUND FACTS[1]

Plaintiffs Garey Davis, John Hellner, Ronald G. Smith, Tommy Stewart, Daniel Strong, Brent Whitsell, and Bobby Windle are male former employees of TXU, who held various positions in TXU's Cable Splicing Work Group at DFW Airport (the "Cable Splicing Group").[2] Plaintiffs historically worked in all male crews, until August 2002 when female

---

[1]The Court recites here, in the light most favorable to Plaintiffs, only those facts that are material to the resolution of Plaintiffs' claims. In their nearly 90 pages of briefing for this motion (over 40 of which are devoted to recounting facts), Plaintiffs muddy the waters in this case by raising a multitude of immaterial issues of fact, which there is no need to recount for purposes of this Order.

[2]Davis was the Supervisor and Manager of the entire DFW Airport Group and therefore was not specifically a member of the Cable Splicing Group. Rather, he was the supervisor of all those on the Cable Splicing Group.

ORDER – PAGE 1

TXU employees Rhonda Walker and Mary Frye joined the Cable Splicing Group. While the exact details are not relevant for purposes of this Order, the working relationships between Plaintiffs and Walker and Frye, and even between Walker and Frye themselves, was not always harmonious and respectful. In particular, Plaintiffs complained that Walker and Frye were not held to the same standards as male cable splicers, and Walker complained at various times about incidents involving her co-workers.

In July 2005, Walker resigned from the Cable Splicing Group following an incident in which she fell into a manhole. Walker's resignation sparked an internal investigation, in which Walker and Frye disclosed that crew members often played poker on the job. Plaintiffs, with the exception of Davis, were individually and repeatedly questioned about crew members playing cards on the job and each denied the allegations. Eventually, however, Plaintiffs one-by-one admitted that crew members had in fact played cards during work hours and that they further had conspired among themselves to hide this fact from the investigation. According to Plaintiffs, Walker plaid poker at least once, and Walker and Frye, at times, played solitaire on a computer or threw dice.

Following Plaintiffs' admissions, TXU terminated Plaintiffs Hellner, Smith, Stewart, Strong, and Whitsell; Davis and Windle accepted early retirement.[3] In response, Plaintiffs brought this suit alleging that TXU discriminated against them on the basis of their gender

---

[3]Davis and Windle argue that they were constructively discharged because they accepted retirement knowing that they would be terminated if they did not. Because the Court holds that no Plaintiff can state a prima facie case on other grounds, the Court need not reach the question of whether they were constructively discharged.

by disciplining them more severely than Walker and Frye for what Plaintiffs allege was similar conduct.

At the end of their employment with TXU: Davis had been with TXU[4] for over 40 years and held the title of "Distribution Manager – Fort Worth Network and DFW Airport Group"; Hellner had been with the company for over 8 years and held the title of "Cable Splicer"; Smith had been with the company for over 26 years and held the title of "Senior Lineman"; Stewart had been with the company for over 26 years and held the title of "Crew Foreman"; Strong had been with the company for over 23 years and was a Crew Foreman; Whitsell had been with the company for over 28 years and was a Crew Foreman; and Windle had been with the company for over 26 years and was a Senior Lineman.[5] At this same time, Walker had been with TXU for less than 5 years and Frye for approximately 7; both held the title of Cable Splicer. Although she resigned as a cable splicer, TXU later rehired Walker in a different capacity.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admission on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). In making this

---

[4]Or a predecessor company.

[5]Job titles for the cable splicing group are, from most junior to most senior: Utility Worker (a trainee position), Cable Splicer, Senior Lineman, and Crew Foreman.

determination, courts must view all evidence and draw all reasonable inferences in the light most favorable to the party opposing the motion. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). However, courts need not sift through the record in search of triable issues. *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006).

The moving party bears the initial burden of informing the court of the basis for its belief that there is no genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this showing, the burden shifts to the nonmovant to establish that there is a genuine issue of material fact such that a reasonable jury might return a verdict in its favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). In doing so, the nonmovant may not rely on "naked assertions of an actual dispute" but instead "must adduce admissible evidence which creates a fact issue concerning the existence of every essential component of that party's case." *In re Lewisville Props., Inc.*, 849 F.2d 946, 950 (5th Cir. 1988) (citing *Anderson*, 477 U.S. at 255-56). Moreover, "[c]onclusory allegations, speculation, and unsubstantiated assertions" will not suffice to satisfy the nonmovant's burden. *Douglass v. United Servs. Auto. Ass'n.*, 79 F.3d 1415, 1429 (5th Cir. 1996) (en banc). If the nonmoving party fails to make a showing sufficient to establish an element essential to its case, the Court must grant summary judgment. *Celotex*, 477 U.S. at 322-23.

### III. THE *MCDONNELL-DOUGLAS* BURDEN-SHIFTING FRAMEWORK

A plaintiff can demonstrate discrimination through either direct or circumstantial evidence. *Alvarado v. Tex. Rangers*, 492 F.3d 605, 611 (5th Cir. 2007). Where, as here,[6] the plaintiff relies on circumstantial evidence of discrimination, courts apply the three-part burden shirting framework set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973). *Alvarado*, 492 F.3d at 611. Under this framework, the plaintiff must first establish a prima facie case of age discrimination. *Id.* If successfully stated, a prima facie case creates a rebuttable presumption that the employer engaged in unlawful discrimination. *Id.* Once the plaintiff states a prima facie case, the burden of production shifts to the defendant employer to articulate a legitimate, nondiscriminatory reason for taking the adverse employment action at issue. *Id.* If the employer produces such a reason, the burden again falls on the plaintiff "to establish either: (1) that the employer's proffered reason is not true but is instead a pretext for discrimination; or (2) that the employer's reason, while true, is not the only reason for its conduct, and another 'motivating factor' is the plaintiff's protected characteristic." *Id.* (citing *Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004)).

---

[6]Direct evidence is defined as "evidence that, if believed, proves the fact of discriminatory animus without inference or presumption." *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 897 (5th Cir. 2002). Here, Plaintiffs offer no such evidence and do not argue that they can.

### IV. PLAINTIFFS CANNOT STATE A PRIMA FACIE CASE OF GENDER DISCRIMINATION BECAUSE THEY WERE NOT SIMILARLY SITUATED TO WALKER OR FRYE

Plaintiffs' claims slip and fall on the first step of the *McDonnell-Douglas* framework because Plaintiffs cannot establish a prima facie case of discrimination. To establish a prima facie case of employment discrimination based on disparate treatment, a plaintiff must show that "(1) he was a member of a protected class; (2) he was qualified for the benefit or promotion he sought; (3) that he was denied the benefit or promotion, and (4) that similarly situated employees outside the protected class were treated more favorably (*i.e.*, that the employment decision of which he complains was differently applied to him)." *Coleman v. Exxon Chem. Corp.*, 162 F. Supp. 2d 593, 608 (S.D. Tex. 2001); *see also Okoye v. Univ. of Tex. Houston Health Sci. Ctr.*, 245 F.3d 507, 512-13 (5th Cir. 2001); *McGarity v. Mark Kay Cosmetics*, No. 3:96-CV-3413-R, 1998 WL 50460, at *3 (N.D. Tex. 1998).

Here, Plaintiffs cannot establish the fourth element of a prima facie case because Plaintiffs were not situated similarly to members of the opposite sex – namely, Walker and Frye – who were treated differently. To establish that he was similarly situated to a member of the opposite gender who was treated favorably, a plaintiff must show that "the misconduct for which [he] was discharged was nearly identical to that engaged in by a [female] employee whom [the company] retained." *Smith v. Wal-Mart Stores (No. 471)*, 891 F.2d 1177, 1180 (5th Cir. 1990) (quoting *Davin v. Delta Air Lines, Inc.*, 678 F.2d 567, 570 (5th Cir. Unit B 1982)) (last alteration in original). "Employees with different responsibilities, different capabilities, different work rule violations or different disciplinary records are not considered

to be 'nearly identical.'"[7] *Coleman*, 162 F. Supp. 2d at 608 (citing *Okoye*, 245 F.3d at 514-15); *see also Ysleta Indep. Sch. Dist. v. Monarrez*, 177 S.W.3d 915, 917 (Tex. 2005) ("Employees are similarly situated if their circumstances are comparable in all material respects, including similar standards, supervisors, and conduct." (looking to federal case law when applying Texas employment discrimination statute expressly based on Title VII)).

Plaintiffs cannot demonstrate that their conduct was "nearly identical" to that of Walker or Frye for a number of reasons. First, it is undisputed that each Plaintiff, with the exception of Hellner,[8] had substantially more seniority with TXU than Walker or Frye, and, more importantly, also had an elevated job title and, for all practical purposes, served as Walker and Frye's supervisor. The case law in this area makes clear that supervisors and junior employees generally cannot be similarly situated because employers will quite reasonably hold supervisors and senior employees to a different standard of conduct than that required of junior employees. *See, e.g.*, *Chandler v. La Quinta Inns, Inc.*, No. 5:06-CV-266,

---

[7]Many courts, including some of those cited in this Order, have instead performed this analysis later in the *McDonnell-Douglas* framework in the context of determining whether the employer's nondiscriminatory explanation for the adverse employment action is pretextual. *See Nieto v. L&H Packing Co.*, 108 F.3d 621, 623 n.5 (5th Cir. 1997) (noting that "apparent confusion in the case law" seems to suggest that the similarly situated inquiry is relevant at both the prima facie and pretext stages). However, this is irrelevant to the Court's analysis because the Fifth Circuit has made clear that the "nearly identical" standard applies equally at both the prima facie and pretext stages. *See Coleman*, 162 F. Supp. 2d at 608 ("The Fifth Circuit has held that the 'nearly identical' standard applies equally to the fourth prong of the *prima facie* case.").

[8]At the time of his termination, Hellner had been employed by TXU for approximately twice as long as Walker and approximately one year longer than Frye. However, all three held the job title of Cable Splicer and, according to Plaintiffs, all three trained to become cable splicers at the same time.

ORDER – PAGE 7

2007 U.S. Dist. LEXIS 26799, at *12 (W.D. La. April 11, 2007) ("The fact that [plaintiff and the alleged comparator, who was a regional manager and plaintiff's supervisor,] had different levels of responsibility preclude [sic] a finding that they were similarly-situated." (citing *Okoye*, 246 F.3d 507 and *Little v. Republic Refining Co.*, 924 F.2d 93, 97 (5th Cir. 1991))); *Sagaral v. Wal-Mart Stores Tex. L.P.*, 516 F. Supp. 2d 782, (S.D. Tex. 2007) (finding that assistant store manager and photo lab employee were not similarly situated in part because they "had different positions").

Here, with the exception of Hellner, each Plaintiff had at least 23 years of experience with TXU, while, by comparison, Walker had between 4 and 5 years with TXU and Frye had 7. Moreover, (also with the exception of Hellner) each Plaintiff had been promoted to a senior position within the Cable Splicing Group and was responsible in some capacity for supervising, "leading," and/or training Walker and Frye. Plaintiffs concede that Davis was the manager of the entire DFW Airport Group and, by virtue of that position, was Walker and Frye's supervisor. Further, Stewart, Strong, and Whitsell were Crew Foremen, who Plaintiffs concede acted as "leadmen" who "led their co-cable splicers/lineman on three or four man crews."[9] Pl.'s Br. in Opp. to Def.'s Mot. For Summ. J. at 14. Smith and Windle also held mid-level positions, which they obtained by virtue of their advanced "knowledge and skill sets." Pl.'s Resp. to Def.'s Mot. For Summ. J. at 4. These undisputed facts alone

---

[9]Plaintiffs argue that Crew Foremen were not "supervisors" and that a fact issue exists as to whether Cable Splicers and Senior Linemen "reported directly" to Crew Foremen. The Court fails to see any material distinction between being a "supervisor" and a senior employee who leads other employees in their daily duties as part of a three or four person crew.

are sufficient to establish that Davis was not similarly situated to Walker or Frye and further cast serious doubt on all but Hellner's ability to state a prima facie case.

In addition to seniority and supervisory responsibility, it is undisputed that Plaintiffs (with the exception of Davis) engaged in a conspiracy to withhold information from TXU's internal investigation into their on-the-job behavior. Dishonesty on the part of the plaintiff alone can be sufficient to destroy "substantial similarity," even when the conduct of those on either side of the protected classification at issue is virtually identical. *See Ysleta Indep. Sch. Dist.*, 177 S.W.3d at 918 (failing to find substantial similarity where both female and male employees clocked-in for co-workers because "[t]here is no evidence that the time card violations by females included a conspiracy to conceal another employee's absence from work"). Here, each Plaintiff (again excluding Davis) agreed to lie to company investigators about playing poker during work hours, actually lied as agreed, and later recanted and admitted the truth when the conspiracy fell apart. Regardless whether Walker or Frye may have played poker or other games on occasion, it is undisputed that neither Walker nor Frye entered into a conspiracy to lie about those facts; to the contrary, it was Walker and Frye who brought card playing on the clock to TXU's attention.

Therefore, in light of the responsibility and seniority gap between most of the Plaintiffs and Walker and Frye and because Plaintiffs conspired to lie – and did lie – to TXU investigators, the Court holds that Plaintiffs conduct was not "nearly identical" to that of Walker or Frye. Accordingly, the Court holds that Plaintiffs were not similarly situated with Walker and Frye and, therefore, cannot establish a prima facie case of gender discrimination.

## CONCLUSION

Because no Plaintiff can state a prima facie case of gender discrimination, the Court grants TXU's motion and enters summary judgment in favor of TXU and against Plaintiffs.

Signed April 21, 2008.

_____
David C. Godbey
United States District Judge

ORDER – PAGE 10